UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

KAHLID KABIR,

        Petitioner,

v.                                                                  20-CV-598 (JLS)

JULIE WOLCOTT, Superintendent of
Orleans Correctional Facility,
ANTHONY ANNUCCI, Acting
Commissioner of Department of
Corrections and Community
Supervision,

        Respondents.

───────────────────────────────

## DECISION AND ORDER

*Pro se* petitioner Kahlid Kabir, an inmate at Orleans Correctional Facility ("Orleans"), petitioned this Court for a writ of habeas corpus under 28 U.S.C. § 2241, seeking release based on the conditions of his confinement during the COVID-19 pandemic. Dkt. 1. He also moved for a temporary restraining order that seeks the same relief. Dkts. 2, 3. Respondents Julie Wolcott and Anthony Annucci moved to convert the petition to one under 28 U.S.C. § 2254 and to dismiss the petition. Dkt. 8. For the following reasons, the Court grants Respondents' motion.

## BACKGROUND

**A.    Facts.**

Kabir currently is in custody at Orleans, a New York State Department of Corrections and Community Supervision ("DOCCS") facility, serving 12 years on a

2015 conviction via jury verdict in Monroe County. *See* Dkt. 1, at 2 ¶¶ 4, 5; Dkt. 8-1, at 2 ¶ 2; Dkt. 8-2. He alleges that he is "57 month[s] away from correction release." Dkt. 1, at 2 ¶ 8.

Kabir claims that his "current prison conditions are unconstitutional" and violate state and national proclamations and executive orders. *See* Dkt. 1, at 2 ¶ 3; *see also* Dkt. 2, at 1; Dkt. 3, at 1. He alleges that "the staff is not equipped to respond" if an outbreak occurred at Orleans, and that his "current state of prison conditions does not allow social distance practices." Dkt. 1, at 3 ¶ 14. He raises "federal due process" claims based on "deprivation of adequate medical care" because Orleans "is unable to protect his health." *See* Dkt. 1, at 3 ¶ 11; Dkt. 3, at 1, 4; *see also* Dkt. 2, at 5 ¶ 10

Kabir's "pre-existing medical conditions and side effects of the medication that [he] take[s] creat[e] a grave risk" to him if he were to contract COVID-19, which exacerbate the conditions of his confinement during the COVID-19 pandemic. *See* Dkt. 2, at 3; *see also* Dkt. 3, at 1. In particular, Kabir alleges that he has a kidney defect, is pre-diabetic, has sleep apnea and sleeps with a C-PAP machine, has high blood pressure for which he takes medication that "causes respiratory side effects, shortness of breath[] and irregular heartbeat," and suffers from seasonal allergies that affect his breathing and lungs. *See* Dkt. 1, at 2 ¶ 8, 3 ¶ 10; Dkt. 2, at 4 ¶ 8. As a result, Kabir asks the Court to "release [him] from this unconstitutional condition of imprisonment." *See* Dkt. 2, at 1; *see also* Dkt. 11, at 3 ¶ 8.

Specifically, Kabir alleges that his "setting is a dorm one, with over 50 inmates in [an] enclosed area and space." *See* Dkt. 1, at 3 ¶ 9. He alleges that his "current state of prison conditions does not allow social distance practices." *Id.* at 3 ¶ 14. Moreover, Kabir alleges that the staff he "deal[s] with in [his] dorm will only wear . . . mask[s] when [their] superiors are visiting," and that most staff "have consistently shunned the responsibility to wear the mask[s] provided." *See* Dkt. 2, at 4 ¶¶ 5-6. He claims that "[m]ore than 11 employees have been within the walls of the facility with COVID-19" but does not allege that any inmates tested positive for the virus. *See* Dkt. 1, at 3 ¶ 12.

Kabir does not allege that he presented his claims to a state court. Instead, he states that he has "no immediate remedy under DOCCS Directive # 4040." *See* Dkt. 2, at 5 ¶ 9. He also alleges that "state courts have effective March 17, 2020 closed [their] doors," so he has "no other form of recourse." *See* Dkt. 1, at 3 ¶ 13.

### B. Procedural History.

On May 12, 2020, Kabir submitted a petition for a writ of habeas corpus under 28 U.S.C. § 2241, seeking release from custody based on the conditions of his confinement at Orleans during the COVID-19 pandemic. Dkt. 1. The same day, he moved for a temporary restraining order, seeking the same relief. Dkts. 2, 3. On May 26, 2020, the Court ordered Respondents to file and serve an answer or a motion to dismiss the petition within five days. Dkt. 4. Respondents moved for an extension of time to respond to the petition on May 29, 2020. Dkt. 6. The same day,

3

the Court granted Respondents' motion and ordered Respondents to respond to the petition by June 5, 2020. *See* Dkt. 7.

On June 5, 2020, Respondents moved to convert Kabir's petition to one brought under 28 U.S.C. § 2254 and to dismiss the petition. Dkt. 8. Kabir submitted an affidavit of service on June 10, 2020, stating that he served his response on counsel for Respondents and on the Court. *See* Dkt. 9. The Court did not receive Kabir's response and directed him to resubmit it. *See* Dkt. 10. On July 8, 2020, the Court received Kabir's response, which opposes Respondents' motion in all respects and asks the Court to grant Kabir judgment on the pleadings under Federal Rule of Civil Procedure 12(c) because Respondents' motion was frivolous and did not comply with the Court's order. *See* Dkt. 11. The Court deems Kabir's response timely filed. *See* Dkt. 10.

## DISCUSSION

Because Kabir is a *pro se* petitioner, the Court will "construe [his] pleadings liberally and interpret them 'to raise the strongest arguments they suggest.'" *See Wells v. Annucci*, No. 19-cv-3841, 2019 WL 2209226, at *1 (S.D.N.Y. May 21, 2019) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). Kabir is entitled to liberal construction of his submissions, but his *pro se* status "does not exempt [him] from compliance with the relevant rules of procedural and substantive law." *See Siao-Pao v. Connolly*, 564 F. Supp. 2d 232, 238 (S.D.N.Y. 2008) (internal quotations and citations omitted).

## I. Kabir's Motion for Judgment on the Pleadings.

Kabir seeks judgment on the pleadings because "Respondents disregarded the Court's mandate and instead filed and served a motion to convert [his] 28 U.S.C. § 2241 habeas petition to a 28 U.S.C. § 2254 then dismiss if converted . . . ." *See* Dkt. 11, at 4 ¶ 11. In addition, Kabir argues that Respondents "file[d] a frivolous motion for the sole purpose of depriving [him] an adequate remedy of standing to assert . . . his Eighth Amendment guarantee . . . of the right to be free from unconstitutional confinement . . . ." *See id.* at 5 ¶ 14.

But Respondents complied with the Court's order in Dkt. 7, which directed them to "file and serve an answer and memorandum of law or a motion to dismiss the petition" by June 5, 2020. *See* Dkt. 7. In particular, Respondents moved to convert and dismiss Kabir's petition on June 5, 2020. *See* Dkt. 8; *see also* Dkt. 11, at 4 ¶ 11. And for the reasons set forth below, Respondents' motion was not frivolous. The Court therefore denies Kabir's motion for judgment on the pleadings and proceeds to the merits of Respondents' motion.

## II. Respondents' Motion to Convert and to Dismiss.

### A. Motion to Convert the Petition from a Section 2241 Petition to a Section 2254 Petition.

Respondents moved to convert Kabir's petition, filed under Section 2241, to a Section 2254 petition because relief under Section 2241 is not available to Kabir, who is in custody under a state-court judgment of conviction. *See* Dkt. 8; Dkt. 8-5,

at 3-5.¹ Kabir opposes Respondents' request, arguing that Section 2241 is available to prisoners who challenge the post-conviction execution of their sentences, as he does. *See* Dkt. 11, at 5 ¶ 15.

There are three statutes under which an individual in custody may seek a writ of habeas corpus, two of which are relevant here. Section 2254 applies to "a person in custody pursuant to the judgment of a State court . . . on the ground that he is in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a). Section 2241 is worded more broadly and extends to a prisoner who, among other things, is "in custody under . . . the authority of the United States" or is "in custody in violation of the Constitution or laws . . . of the United States." *See* 28 U.S.C. §§ 2241(c)(1), (3). And Section 2255, which does not apply here, allows a "prisoner in custody under sentence of a court established by Act of Congress"—*i.e.*, a federal prisoner—to attack his sentence. *See* 28 U.S.C. § 2255(a).

The Second Circuit has addressed the difference among these provisions. A person in federal custody may petition for a writ of habeas corpus under Section 2255 or Section 2241, depending on the nature of the challenge: "a federal prisoner's challenge to the execution of a sentence is properly filed pursuant to [Section] 2241, rather than Section 2255, because Section 2255 allows a federal prisoner to challenge only the legality of the original imposition of a sentence." *See James v. Walsh*, 308 F.3d 162, 166 (2d Cir. 2002) (citing *Chambers v. United States*,

---

¹ Page references to Dkt. 8-5 are to the numbering generated by CM/ECF, which appears in the header of each page.

106 F.3d 472, 474 (2d Cir. 1997)). By contrast, Section 2254 "permits a state prisoner to file a habeas petition 'on the ground that he is in custody in violation of the Constitution or laws . . . of the United States.'" *Id.* at 166-67 (quoting 28 U.S.C. § 2254(a)). In other words, a "claim that one is 'in custody' in violation of federal laws [under Section 2254] is broader than a claim that the imposition of one's sentence is illegal." *Id.* at 167.

The "plain language of the pertinent statutes indicates . . . that a federal prisoner may challenge the imposition, but not the execution, of a sentence under Section 2255, while a state prisoner may challenge either the imposition or the execution of a sentence under Section 2254." *James*, 308 F.3d at 167. As a result, a state prisoner's "petition claiming improper execution of his sentence [is] properly brought under Section 2254." *Id.*

The Second Circuit later expanded on this analysis when it considered a parole revocation challenge, concluding that "a state prisoner challenging his or her parole revocation must file under section 2254." *See Cook v. N.Y. State Div. of Parole*, 321 F.3d 274, 275 (2d Cir. 2003). Comparing a person in custody on a state judgment to one in custody on a federal judgment, the court explained that a state prisoner "not only may, but according to the terms of section 2254 must, bring a challenge to the execution of his or her sentence . . . under section 2254." *See id.* at 278. Section 2241 is "unavailable" to such a petitioner. *See id.* Stated otherwise, "Section 2241 is not an independent and separate avenue of relief but is to be read in conjunction with the requirements of [Section] 2254, which are 'a limitation on

7

the general grant of jurisdiction conferred in section 2241 that applies to cases involving prisoners subject to state court judgments.'" *Torres v. Cronin*, No. 19-cv-6462, 2019 WL 6001000, at *1 (W.D.N.Y. Nov. 14, 2019) (quoting *Rittenberry v. Morgan*, 468 F.3d 331, 337 (6th Cir. 2006)).

Kabir is in state custody based on a state conviction and judgment. *See* Dkt. 1, at 2 ¶¶ 4-5; Dkt. 8-1, at 2 ¶ 2; Dkt. 8-2. He alleges that his confinement at Orleans during the COVID-19 pandemic violates his federal due process rights and deprives him of adequate medical care. *See* Dkt. 3, at 4-5. In other words—and as he acknowledges—Kabir claims that his custody in execution of his sentence violates his Eighth Amendment rights. *See* Dkt. 11, at 7. As such, his petition falls within the purview of Section 2254.[2]

The Court is not bound by Kabir's choice to frame his petition under Section 2241 and, after considering the substance of his allegations, must convert the petition to one filed pursuant to Section 2254.[3] *See Cook*, 321 F.3d at 277 ("[I]f an

---

[2] The Second Circuit has interpreted prison condition claims as comprising challenges to execution of a sentence in the context of federal prisoners. *See Thompson v. Choinski*, 525 F.3d 205, 209 (2d Cir. 2008) ("This court has long interpreted § 2241 as applying to challenges to the execution of a federal sentence, 'including such matters as the administration of parole, . . . prison disciplinary actions, prison transfers, type of detention and prison conditions.'" (citation omitted)). There is no reason to conclude differently in the context of a state prisoner's prison conditions-based claim under Section 2254.

[3] The Court recognizes that district courts across the country have treated state prisoners' COVID-19-related habeas petitions differently. *Compare Makin v. Wainwright*, No. 20-cv-912, 2020 WL 2085141, at *1 (N.D. Ohio Apr. 30, 2020) (holding that state prisoner's habeas petition "was not properly brought under [Section] 2241" and that Section 2254 was the proper provision), *and Money v. Pritzker*, No. 20-cv-2093, 2020 WL 1820660, at *2 (N.D. Ill. Apr. 10, 2020) (examining petition for "writs of habeas corpus under 28 U.S.C. § 2254 for relief

8

application that should be brought under 28 U.S.C. § 2254 is mislabeled as a petition under section 2241, the district court must treat it as a section 2254 application instead."); *Torres*, 2019 WL 6001000, at *2 (concluding that petitioner was limited to relief under Section 2254, noting that petitioner's framing under Section 2241 was not dispositive, and converting to a Section 2254 petition).

For these reasons, the Court grants Respondents' motion to convert Kabir's petition to one raised under 28 U.S.C. § 2254.[4]

B.  **Motion to Dismiss the Petition.**

Respondents argue that the Court must dismiss Kabir's petition because: (1) habeas relief is not available for a conditions of confinement claim; and (2) Kabir failed to exhaust available state remedies. See Dkt. 8-5, at 6-10.

---

from custody in violation of the Eighth and Fourteenth Amendments to the U.S. Constitution"), *with McPherson v. Lamont,* No. 3:20-cv-534 (JBA), 2020 WL 2198279, at *5 & n.3 (D. Conn. May 6, 2020) (holding that Section 2241 was the proper provision for sentenced and pre-trial prisoners in state custody based on Second Circuit cases, *Roccisano v. Menifee,* 293 F.3d 51 (2d Cir. 2002), and *Adams v. United States,* 372 F.3d 132 (2d Cir. 2004), which involved *federal* prisoners' habeas claims). The Court has considered these decisions, but bases its analysis on the Second Circuit authority cited above. Kabir cites *McPherson* as the framework under which the Court should address his claims. *See* Dkt. 11, at 10-11. But *McPherson* involved a mixed group of sentenced and pre-trial prisoners in state custody and relied on Second Circuit cases that addressed *federal* prisoners' habeas claims and, therefore, does not provide the framework for analyzing Kabir's claims. *See McPherson,* 2020 WL 2198279, at *5 & n.3.

[4] For the reasons discussed in *Llewellyn v. Wolcott,* No. 20-cv-498, 2020 WL 2525770, at *4 (W.D.N.Y. May 18, 2020), 42 U.S.C. § 1983 is not the proper procedural mechanism for Kabir to seek release from Orleans based on the conditions of his confinement.

9

In particular, a sentenced state prisoner who, like Kabir, claims he is in state custody in violation of federal law may seek relief from a federal court by petitioning for a writ of habeas corpus under 28 U.S.C. § 2254(a). Section 2254 requires a petitioner to show that he "exhausted the remedies available in the courts of the State" before a federal court will consider his request for relief. *See* 28 U.S.C. § 2254(b)(1)(A); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court."). To exhaust state remedies, a petitioner must "fairly present federal claims to the state courts . . . to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *McCray v. New York*, 573 F. App'x 22, 23 (2d Cir. 2014) (quoting *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011)). A petitioner exhausts if he "presented [his] constitutional claim to the highest state court from which a decision can be obtained." *Lewis v. Bennett*, 328 F. Supp. 2d 396, 403 (W.D.N.Y. 2004) (citing *Morgan v. Bennett*, 204 F.3d 360, 369 (2d Cir. 2000)).

There are several ways a petitioner may exhaust his claims. As relevant to Kabir's petition, where the claim for relief is not based on the trial court record, a petitioner may exhaust the claim by raising it to the state trial court in a collateral post-conviction motion, such as a motion under New York Criminal Procedure Law § 440. *See Elleby v. Smith*, No. 20-cv-2935, 2020 WL 2611921, at *3 (S.D.N.Y. May 22, 2020). Or a petitioner may petition the trial court or appropriate Appellate Division for a writ of habeas corpus and seek review of any decision denying the

10

petition. *Id.*[5] Even when a petitioner challenges the execution, rather than validity, of his sentence under Section 2254, he "is still required to exhaust all of his state court remedies before filing a habeas petition in [federal] court, and . . . bears the burden of establishing that [he] has met this requirement." *Rapeika v. Administrator of Northern State Prison*, No. 20-cv-5358, 2020 WL 2092790, at *1 (D.N.J. May 1, 2020).

Respondents searched for, but did not locate, filings or evidence that Kabir sought relief for his claims in a state court. *See* Dkt. 8-1, at 3 ¶ 6. And Kabir did not provide any evidence that he exhausted his claims in state court. *See generally* Dkts. 1, 2, 3, 11. In fact, he claims that state courts were closed effective March 17, 2020, so he could not pursue his claims there. *See* Dkt. 1, at 3 ¶ 13. Kabir did not establish that he exhausted his claims, so the Court next considers whether he may be excused from exhausting.

Section 2254 provides two narrow exceptions to its exhaustion requirement. A federal court may grant a petitioner's unexhausted petition for habeas relief if: (1) "there is an absence of State corrective process"; or (2) "circumstances exist that render [the State corrective process] ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B)(i)-(ii). In other words, a petitioner need not exhaust his claims when "there is no further state proceeding for petitioner to

---

[5] Where a petitioner's claim is based on the trial court record—which is not the case for Kabir's petition—a petitioner may exhaust by filing a direct appeal to the relevant Appellate Division and, if relief is denied, seeking leave to appeal to the New York Court of Appeals. *See Elleby*, 2020 WL 2611921, at *3.

11

pursue" or where such pursuit "would be futile." *See Elleby*, 2020 WL 2611921, at *4 (quoting *Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000)).

Neither exception applies here. State court proceedings were available to Kabir when he submitted his petition on May 12, 2020, and they remain available now. *See Elleby*, 2020 WL 2611921, at *4; Dkt. 1, at 5. Even on March 22, 2020, New York state courts' limitations on filings did not apply to "emergency applications related to the coronavirus." *See* Dkt. 8-1, at 3 ¶ 7; Dkt. 8-4. Indeed, New York state courts have received, and resolved, claims and petitions seeking release from state custody in connection with the COVID-19 pandemic. *See, e.g.*, *People ex rel. Squirrell v. Langley*, No. 500451/2020, 2020 WL 2736623 (Sup. Ct. Putnam Cty. May 25, 2020) (dismissing habeas corpus petitions by inmates seeking release during the COVID-19 pandemic where the court, after thoroughly examining the measures taken by the sheriff and other officials, concluded there was no violation of petitioners' due process or Eighth Amendment rights); *People ex rel. Stoughton v. Brann*, No. 451078/2020, 2020 WL 1679209 (Sup. Ct. N.Y. Cty. Apr. 6, 2020) (ordering release of 18 "at-risk" prisoners in a due process challenge by 32 petitioners detained at Rikers Island); *People ex rel. Gregor v. Reynolds*, No. CV20-150, 2020 WL 1910116 (Sup. Ct. Essex Cty. Apr. 17, 2020) (concluding, where several inmates detained pending parole violation proceedings filed Article 70 petitions for release, that sheriff's failure to take adequate protective measures violated the due process rights of an inmate who was vulnerable to COVID-19).

Kabir's claim that state courts are unavailable to him, "without any further factual or legal allegations to support his claim, is inadequate to show that there [was or] is no available process in the state courts." *See Rapeika*, 2020 WL 2092790, at *2. Courts may excuse petitioners from exhausting their claims when "relief is truly unavailable," but excusing exhaustion here, where state courts are available, "would turn the habeas system upside down." *See Money*, 2020 WL 1820660, at *22. For the same reasons, Kabir did not demonstrate that pursuing his request for release in state court is or would have been futile. *See Elleby*, 2020 WL 2611921, at *4.

Other courts have reached similar conclusions when faced with habeas petitions seeking release from state custody based on the COVID-19 pandemic. *See Griffin v. Cook*, No. 3:20-cv-589 (JAM), 2020 WL 2735886, at *5 (D. Conn. May 26, 2020) (collecting cases); *Elleby*, 2020 WL 2611921, at *5.

Requiring exhaustion of Kabir's claims in state court affords "the state court[] . . . the first opportunity to review [his] claim[s] and provide any necessary relief." *See O'Sullivan*, 526 U.S. at 844; *see also Rose v. Lundy*, 455 U.S. 509, 515 (1982) ("[A]s a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act."). Exhaustion also ensures that, if Kabir's petition ends up back in federal court, it will "be accompanied by a complete factual record to aid [the Court] in [its] review." *See Rose*, 455 U.S. at 519. A full factual record is particularly important here, in light of the "rapidly changing conditions in prison and the evolving steps that

13

prisons are taking to meet the unprecedented challenges presented by the pandemic." *See Elleby*, 2020 WL 2611921, at *5.

Because Kabir did not exhaust his habeas claims in state court and did not demonstrate that either state courts were or are unavailable to him or that exhaustion is futile,[6] the Court dismisses his petition without prejudice.[7] Kabir may present his claims to a state court.

### III. Kabir's Motion for a Temporary Restraining Order.

Along with his petition, Kabir moved for a temporary restraining order "releasing the petitioner from [his] unconstitutional condition of imprisonment." Dkt. 2, at 1. Because the temporary restraining order seeks the same relief— release from Orleans—as the petition, the Court denies Kabir's motion for the reasons discussed above in Section II.B. *See Holloway v. Wolcott*, No. 20-cv-6329, 2020 WL 3172772, at *3 (W.D.N.Y. June 15, 2020) (denying motion for temporary

---

[6] Alternatively, Respondents argue that the Court must dismiss Kabir's petition because Kabir may not assert a conditions of confinement claim in a Section 2254 petition. *See* Dkt. 8-5, at 6-7. Because the Court dismisses Kabir's petition for failure to exhaust, it need not reach this alternative argument.

[7] The Court notes that Kabir would have been required to exhaust his claims in state court if the Court had denied Respondents' motion to convert the petition and had analyzed Kabir's claims under 28 U.S.C. § 2241. *See Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632-35 (2d Cir. 2001) (citing the "requirement of administrative exhaustion as spelled out in . . . decisional law" that applies to Section 2241 petitions and declining to excuse petitioner's failure to exhaust); *Razzoli v. Strada*, No. 10-cv-4802, 2013 WL 837277, at *2 (E.D.N.Y. Mar. 6, 2013) (explaining that "[b]efore seeking habeas relief under § 2241, . . . prisoners must exhaust any available administrative remedies, or else justify the failure to exhaust these remedies," and holding that petitioner was "not excused from his duty to exhaust administrative remedies").

restraining order and preliminary injunction where it "appear[ed] Petitioner's claims, construed under Section 2254, [were] unexhausted"); *see also WarnerVision Entm't Inc. v. Empire of Carolina, Inc.*, 101 F.3d 259, 261 (2d Cir. 1996) ("The purpose of a preliminary injunction is not to give the plaintiff the ultimate relief [he] seeks.").

## CONCLUSION

For the reasons stated above, the Court:

GRANTS Respondents' motion (Dkt. 8) to: (1) convert Kabir's petition, filed under 28 U.S.C. § 2241, to one filed under 28 U.S.C. § 2254; and (2) dismiss Kabir's petition for failure to exhaust; and

DENIES Kabir's motion for judgment on the pleadings (Dkt. 11); and

DENIES Kabir's motion for a temporary restraining order (Dkt. 2).

In addition, because the issues raised here are not the type of issues that a court could resolve in a different manner, and because these issues are not debatable among jurists of reason, the Court concludes that Kabir did not make a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. § 2253(c)(2), and, accordingly, DENIES a certificate of appealability.

The Court also certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and, therefore, DENIES leave to appeal as a poor person. *See Coppedge v. United States*, 369 U.S. 438, 444-46 (1962).

Kabir must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within 30 days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with the United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

The Clerk of Court shall update the docket in this case to reflect that Kabir's petition (Dkt. 1) was filed pursuant to 28 U.S.C. § 2254 and shall close this case. The Clerk of Court also shall mail Kabir a copy of this decision and order.

SO ORDERED.

Dated:   July 14, 2020
         Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE